Will the clerk call the next case? 3-22-0390 Kenneth R. Manny Sr. Appellant versus Health Care Solutions Team Appellee. Okay, Mr. Manny, you may proceed. Yes, sir. This court is well aware that I, Kenneth R. Manny Sr. Plaintiff is not an attorney. Because of the actions of the defendants, plaintiff is indigent and cannot afford an attorney. Thus, the fee waiver in this case. This case was filed under the advice of the Office of the Executive Inspector General and plaintiff would appreciate it if this court would force the matters involving this case and this case only. The plaintiff has attached all documents referenced and listed, D-1 through D-16, that were entered in the brief when this case was originated. Defendant's Health Care Solutions Team, Health Care Solutions Team Supervisor Matt Peter Benson and Times Insurance Company of Milwaukee, Wisconsin, now owned by Allstate, Insurance, are charged in civil court with insurance, mail, and bank fraud. This case was filed on the advice of the Office of the Executive Inspector General based on a re-hearing ordered by the Office of the Executive Inspector General and instituted with the decision February 16, 2021. This case has been about race and politics as laws, statutes, and facts have been based on the individuals involved, not the laws and statutes. The Office of the Executive Inspector General in 2020 ordered the Illinois Department of Insurance to re-hear all matters involving Kenneth R. Manning Sr., plaintiff, on his complaint against defendant's Health Care Solutions Team, Health Care Solutions Team Supervisor Matt Peter Benson and Times Insurance, Insurance Company of Milwaukee, Wisconsin, now owned by Allstate Insurance Company of Illinois. The Office of the Executive Inspector General, using their authority, forced the Illinois Department of Insurance to re-hear their retaliation hearing against the plaintiff, Kenneth R. Manning Sr., for filing a complaint with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights. Plaintiff being a victim of insurance, mail, and bank fraud, filed a complaint with the Illinois Department of Insurance, the governing body against defendant's Health Care Solutions Team, Health Care Solutions Team Supervisor Manager Peter Benson, and Insurance Company Times Insurance, alleging insurance, mail, and bank fraud. Health Care Solutions Team and plaintiff contracted several insurance companies, including Colorado Bankers, NEPCO Integra, Times Insurance, and several others. Health Care Solutions Team and Health Care Solutions Team Supervisor Manager Peter Benson were contracted to receive commissions and overrides from all business related to plaintiff. Plaintiff, after receiving attached denial information from Colorado Bankers Insurance along with a refund credit to plaintiff's personal bank account, Chase Bank. Document 1 is a copy of a decline letter from Colorado Bankers saying they're declining coverage on plaintiff. They said this policy was written by Health Care Solutions Team and Health Care Solutions Team Manager Supervisor Manager Peter Benson and they are declining this coverage. That's document 1. Document 2 is from Colorado Bankers saying it's a refunded to the personal business account of plaintiff $30.05 for the policy and agent of record Supervisor Manager of Health Care Solutions Team Peter Benson. That's document number 2. Along with this attached statute from the Illinois General Assembly, which is document number 3. The Illinois General Assembly sent a copy of this document to Colorado Bankers helping them understand that the policies written by Health Care Solutions Team and Health Care Solutions Team Supervisor Manager Peter Benson were fraudulent policies. The Illinois General Assembly disallows policies written by managers, owners, stockholders, etc. on subordinates and Supervisor Manager Peter Benson was indeed the supervisor of Kenneth Manny Sr. Plaintiff and this policy was illegal because Kenneth R. Manny Sr. has no insurable interest with Health Care Solutions Team or Times Insurance for anyone else as well as Kenneth R. Manny Plaintiff did not authorize these policies. So that's what the Illinois General Assembly said made this policy fraudulent. Also attached is the application written by Health Care Solutions Team and Health Care Solutions Team Supervisor Manager Peter Benson. Health Care Solutions Team contracted plaintiffs with Colorado Bankers, NEPCO, and TECRA, Times Insurance, and several other insurance companies to write business. And Health Care Solutions Team authorized Supervisor Manager Peter Benson to receive override permissions on any business related plaintiffs. During the original hearing with the Illinois Department of Insurance, Attorney Martin McGorry stated plaintiffs would have received permissions had he wrote these policies on himself. However, Attorney McGorry stated plaintiffs wanted his white superiors receive all commissions and override, etc. Plaintiff's superiors being Health Care Solutions Team and Health Care Solutions Team Supervisor Manager Peter Benson. Plaintiffs received bank statements which you see before from plaintiff's business account with Providence Bank showing and the court has these illegal debits from Times Insurance and NEPCO and TECRA from plaintiff's personal business account. These illegal debits because defendants have not provided one document authorizing them to debit on this account. Health Care Solutions Team provided to Health Care Appointment and that's how he was able to send the debits. Plaintiff canceled fraudulent insurance policies written by Health Care Solutions Team Supervisor Peter Benson with NEPCO and TECRA and with Colorado Bankers. NEPCO and TECRA referenced the Illinois General Assembly and refunded premiums from plaintiff's business account. That's the copy of this check. D-5 when NEPCO and TECRA refunded over $1,300 after they acknowledged that the Illinois General Assembly said that this policy was illegal and fraudulent. It also has the letter that's D-5-C document and D-5-C when they returned the funds that were debited, illegally debited. Times of insurance confessed to debiting plaintiff's business account 18 times. 18 times as a result of the policies written by Health Care Solutions Team and Health Care Solutions Team Supervisor Manager Peter Benson. That's noted as D-6. Mr. Manning? Yes. You're referring to with all of these exhibits, you're brief, is that correct? I am what? You're referring to your brief when you're referring to these exhibits that are attached to your brief? I'm referring to the documents that were sent in with the oral argument that I sent. I sent the oral argument that I'm presenting so the court would have it in their presence when I did this oral argument. Did you send a copy of that to Mr. Berg? I did. So Mr. Berg has them and I sent a copy to the courts and the courts acknowledged the procedure. And this case is documents D-1 through D-16 and I'm currently on D-6 which is a letter from Assurance Health dated November 19, 2014 stating that they had debited the plaintiff's account 18 times. If you look down to paragraph number six. I think what we're having trouble with, Mr. Manning, is we have a page here but it's A-B-C-D-E-F-G-H. That's from the brief. I'm sorry, I couldn't hear. What was that? That's from the brief. Prior to this oral argument, I sent my oral argument that I'm doing right now in writing so the court could follow along with me and I only took out 16 documents from the brief. And that I sent and the court acknowledged the procedure. And so right now I'm on document number six from the oral argument that I sent to the courts three weeks ago. And I'm on document six that shows Assurance Health. Dated letter dated November 19, 2014. And it has the different policy numbers on it. And it's a letter addressed to Mrs. Broker from North Betty. And they sent it to me and it said they acknowledge that they debited my account 18 times for these two insurance policies. And the Illinois General Assembly said these were fraudulent and illegal policies just like the other two I referred to, Colorado Bankers and Nepco Integra, who did return the money. So that's document number six. Can I continue, Your Honor? Oh, please do, yes. Supervisor Manager Peter Benson containing these fraudulent, he filed this, he wrote these applications, and these applications contain a fraudulent mailing address in Joliet. D7 is a copy of the application that Healthcare Solutions Team, Peter Benson, submitted to Healthcare Solutions Team and to Times Assurance. It has D7 on it. This application, where it's circled, it has my name as insured, and it has my home address in Joliet, Illinois, which is, Times Assurance says, is the home address of Healthcare Solutions Team, Supervisor Manager Peter Benson. So this fraudulent and illegal application was written and then had a fraudulent mailing address, so that mail would be received by Supervisor Manager of Healthcare Solutions Team, Peter Benson, at his home. So you see that home address in Joliet. And then it continues with the application itself. And on the third page of the application, it has different information. And as you see, D7D has the agent of record, Peter Benson, who is the Supervisor Manager at Healthcare Solutions Team. Which totally substantiates that this application was illegal and fraudulent. Mr. Manning? Yes, sir. The red light has gone on on the timer. You are entitled as affluent to have five minutes in reply to Mr. Berg's response. Okay. Okay, so we should ignore these other documents that I had referenced? Well, they're not going to be ignored if they're in your brief. They're in the brief, but they're also in the oral argument that I submitted to the court. Yes, and we have that as well. Okay. Very good. Okay. Mr. Berg, you may respond. Thank you. May it please the court, Mr. Manning, good afternoon. My name again is Dennis Berg, and I represent National Health Insurance Company. I want to begin my argument by kind of identifying what my client is. So Healthcare Solutions Team LLC is basically a marketing company in Lyle that connects people in need of insurance products to insurance products offered by many different insurers through independent agents. So it basically markets products to people in need of insurance, and then connects independent agents to the people who would like to buy insurance. And that's the nature of its business. It is not an underwriter of insurance. It does not collect premiums of any sense. Mr. Manning in his discussion has talked about, and he's attached to his briefs, debits. And he just recently, and it was where he left off, he was talking about this unauthorized policy. He's claiming that a policy underwritten by Time Insurance Company, which is affiliated with a company called Assurance Health, which are also named defendants in this case, but were never sued or were never served or the case wasn't pursued because Judge Kappas had dismissed the case in its entirety. But basically, as best I can understand the claim, is that he's complaining that this, I guess this other agent, Peter Benson, did something to cause him to have money deducted from his bank account by Time Insurance Company. And there were those 18 debits that Mr. Manning was referring to. Now, to this, I've been involved with this case since 2019. And it has a very tortured history to it, which I'm hoping the court can kind of appreciate through the briefs. And when I mean tortured history, I just mean that there's many, many filings by Mr. Manning that kind of have to be sorted out. And as long as I have been involved in this case, since 2019, there has not been a pleading that has laid out facts that pled a recognizable cause of action of any kind. Mr. Manning labels things like bank fraud and mail fraud. And I know those are serious words, but there's never been a cognizable pleading of any kind. And that's been recognized by many different courts. And I just want to touch upon the history a little bit, because it's very significant. The operative facts, and I use that word operative intentionally, because one of the reasons why this case was dismissed by Judge Angelo Kappas was under the grounds of race judicata. And there's three elements to race judicata, a prior adjudication on the merits, an identity of causes of action, and an identity of parties. With respect to the identity of cause of action, Illinois, through the Supreme Court of Illinois, in a case River Park, adopted what's called the transactional test. And the transactional test is basically, do the actions involve the same set of operative facts? And from everything I've seen in this case, in all the cases that Mr. Manning has filed, his claims basically involve two policies of insurance that were underwritten back in 2012. And then in 2013, which he discovered at least as early as May 9, 2014. Because that date's in the record, and it's identified because on May 9, 2014, Mr. Manning reportedly made a call to Assurance Health to complain that they had deducted some premiums from his accounts. And those 18 debits, and Mr. Manning can correct me if I'm wrong, amount to $1,013.54. Something, I think that's the figure that I have. And basically, he was seeking a refund of those premium payments from time Assurance, from time slash Assurance Health. And what they did was, they canceled the policy. Okay. But they didn't retroactively go back and repay him those sums that had been deducted up to that date. But Mr. Manning had prepaid an amount that would carry his policy beyond March of 2014. So they did issue him some checks, which I believe is the subject of an appellate oral arguments that's going to follow this one with respect to the Illinois Department of Insurance. Because there's allegations that he fraudulently altered those checks, and which ultimately led to Mr. Manning's license revocation. But those facts are, it's all part of the story, but they're not necessarily the altering of the check or anything like that. It's not necessarily relevant to this appeal. But that's kind of the facts. So that's why we're going back in time to these events that happened in 2013, 2012 to 2014 timeframe. When in 2019, my client was sued on July 9th, 2019 in Cook County under case 2019 M67967. And I've cited that in the record CL98. It's also at CL255. That case was DWP'd. There was a default for want of prosecution. It was never vacated. The case was never reinstated. What happened was Mr. Manning then went on a series, he filed case after case after case in Cook County, based on the same operative facts that premiums had been wrongfully debited by the DWP. That DWP was never vacated. So ultimately, the case came before Judge Brennan of Margaret M. Brennan in the circuit court of Cook County. And she issued an opinion, a three-page written opinion, which dismissed Mr. Manning's claims in their entirety. After that happened, there was a series of filings by Mr. Manning accusing Judge Brennan of racial bias and misconduct. And so the matter was transferred. It was transferred to Judge Anderson, Judge Pamela, I'm sorry, Judge Pamela Meyerson. And because we're in kind of COVID, there was extra time given. And Mr. Manning was allowed to file a motion to reconsider and basically lay out every reason why Judge Brennan's order shouldn't stand and why the case should not be dismissed in its entirety. And Judge Meyerson heard arguments and entered a ruling on April 22nd, 2021. She affirmed the order and she dismissed the entire case in its entirety. And the language of that order says, this is a final order disposing of all claims. So the claims against my client, healthcare solutions team, LLC, were also included in that order, as well as the ones against time insurance and Assurance Health, everybody's. Now, it was at that point that if Mr. Manning felt that something wrong was done or they did not properly handle those claims, his remedy was to appeal to the first district appellate court. 30 days after that final order was entered by Judge Meyerson. But Mr. Manning didn't do that. Instead of appealing to the first district appellate court within the 30 day period, set forth in Supreme Court Rule 303, Mr. Manning chose to file a new lawsuit in the circuit court of DuPage County. The same case, the same basic operative facts as best could be gleaned from the attachments that were filed. Because again, I reiterate that there's never been any sort of cognizable cause of action pled, just documents attached that both the court and the claims. To my knowledge, in this lawsuit that was appealed, my client was the only party that was served and appeared. I have heard, though I don't know this to be fact, that Peter Benson died many years ago. He has not appeared or been served in any of these proceedings, to my knowledge. And so, on behalf of Healthcare Solutions team, I filed a motion to dismiss, a combined motion to dismiss, raising three arguments for dismissal, three separate arguments. One being the statute of limitations. This case involved acts or events that occurred in the year 2013 and 2014. And we know that Mr. Manning knew of them at least as early as May 9, 2014. And he didn't bring his first suit in Cook County until more than five years after that. And in my briefs, I've discussed the various possible statute of limitations that could apply. But giving Mr. Manning the benefit of the doubt of causes of action, and I use that loosely because, again, I reiterate that none had cognizantly been pled. But giving him the benefit of the doubt on that, it would be a five-year statute on the outside. And his claims were not brought within those five years. The Cook County claims were not brought within the five years. Certainly, the DuPage County claims were brought much later. So there's a clear statute of limitations problem that Mr. Manning faces. He has claimed in his briefs, there's a 10-year statute of limitations. Well, a 10-year statute of limitations would apply on a written contract, but Mr. Manning has never produced any written contract that my client has ever violated, that he is a party to, that my client has violated. So there's nothing of the record, nothing in the record to support application of a 10-year statute of limitations. But the big elephant in the room is this race judicata argument, which is another ground that Judge Kappas ruled upon. And that is that the three elements that I discussed earlier have clearly been met. Mr. Manning's claims were dismissed in their entirety with prejudice. And there also is that notion of the DWP that was never vacated, which can serve as a basis for race judicata. So there's kind of race judicata upon race judicata. And I think that Judge Kappas recognized that, that all of the defendants in this case are subject to the same arguments. And that's why the case, again, is dismissed in its entirety. I touched upon the third basis that Judge Kappas made for the dismissal, and that was failure to state a claim. And I believe that's the correct decision. Giving even pro se plaintiffs, such as Mr. Manning, the benefit of the doubt, they still have to follow the rules of pleading and pleading cognitive cause of action with facts. We remain a fact pleading jurisdiction. And that was another basis. And just to conclude, I know my time is up, but I think we've seen that problem with this appellate briefing. I don't think Mr. Manning has articulated a basis to reverse Judge Kappas' opinion in all of his appellate court briefs. Thank you. Thank you, Mr. Byrd. Any questions from the court? No, Your Honor. No, I do not. Okay. Thank you. Okay. I'm sorry. No, that's fine. Mr. Manning, you may reply. You have five minutes in reply, sir. Okay. Thank you, Your Honor. First of all, the first thing I want to talk about is the fact that I asked this court to have the defendant concentrate on this case. And you just saw this defendant spend all of his time talking about old cases. All of his time was spent on old cases, and had nothing to do with this case. He talked about Judge Brennan, who recused herself. He didn't say that. He mentioned her, but he didn't say she recused herself because of her race. She accused me of forging a judge's signature. And when the judge's clerk verified the signature, I asked her to recuse herself. She tried to send it to the Attorney General. He wanted to mention old cases. I asked Mr. Hampton's rebuttal on a response on old cases. This case was based on the Office of the Executive Inspector General ordering the Illinois Department of Insurance to have a rehearing about all of these matters with insurance fraud, mail fraud, and bank fraud. That's what this case was filed on. That's what it should have been. That's what he should have concentrated on. He wanted to talk about other cases. He talked about Judge Meyerson, whom the court sent to the Tantory Department. This was a long case. The courts have violated my rights like crazy because I'm not an attorney and I can't afford an attorney. They took it from when the first judge recused herself. He took it from the Law Division and sent it to the Justice Division. He didn't say anything about that. That's why I asked this case to be concentrated on the 2020 case that was filed based on the Office of the Executive Inspector General ordering a rehearing. Now, he talked about his client. His client, Healthcare Solution Team, is a field marketing organization, FMO. The Department of Insurance requires that. That means I cannot sign a contract with Colorado bankers directly. I have to go through an FMO. He's trying to say his client is not responsible. I could not do business. Nothing could happen with Colorado bankers, with Times Assurance, with NEPCO Integra, unless it went through his client, the field marketing organization. They received overrides and their supervisor, Peter Benson, received permissions. He tried to exclude all of that and concentrate on other cases. That's the fact. He ignored the fact. He ignores the law. There were four policies, not one, that was written illegally sent through his client. All matters has to go through his client. I cannot do anything directly with those companies. Peter Benson, Healthcare Solutions Team supervisor, couldn't do anything unless it goes through his client because that's what Illinois law and that's what the Illinois Department of Insurance requires. So this case is based on the hearing that took place on September 1st, 2020, ordered by the Office of the Executive Director. And when they came up with the same conclusion that Healthcare Solutions Team, they were ignoring the fact that they had these fraudulent applications, these fraudulent mailing addresses, and had gone into my accounts illegally, and the Department of Insurance couldn't find them responsible, the Office of the Executive Inspector General suggested that I file a lawsuit, and that's dated May 2021, against these defendants. I separated the defendants. That's why you have the next case coming. I separated it based on the Office of the Executive Inspector General that oversees all of these agencies and their hearing. That's why when I first started this conversation, I said, let's concentrate on this case, the case that was filed 2021 L001364. When the defendant talked about other cases, we're talking about this case that was overseen by the, and ordered, this hearing was ordered by the Office of the Executive Inspector General, and that's the only case that I'm talking about, and that's all of these documents that were sent for this hearing is involved in that re-hearing ordered by the Office of the Executive Inspector General in 2020. Now, the last thing I want to say is he talked about technical limitations. The Colorado Bankers' Letter was sent to me on May 3rd, you see that, May 3rd, 2014. That's when they acknowledged that these, the first policy application was illegal. That's the date on the letter when they returned my money to my account, and they said the Illinois General Assembly says this policy, all of these policies are fraudulent and illegal. Thank you. Thank you, Mr. Manning, and thank you, Mr. Berg. This matter will be taken under advisement and a written disposition shall issue. At this time, Mr. Manning and Mr. Berg, you'll be Mr. Manning, you'll be brought in for your second case as well, and we will be in brief recess. Thank you. Thank you very much. Thank you, gentlemen. Should I come back on another Zoom? Yes. Come back on the other Zoom? Yep, she's going to bring you back in, Mr. Manning, after we conference after each case. Thank you. Thank you, Judge Harrell.